IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MICHAEL GRIEGO, Personal Representative
of the Wrongful Death Estate of
ALEC J. JARAMILLO, Deceased,
ANDREW JARAMILLO and TERESA ROMO,**

v.  No. 17-cv-0244-KBM-JHR

**LABERTA M. DOUGLAS, Personal Representative
of the Estate of RUSSELL E. DOUGLAS, and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY**

### ORDER GRANTING MOTION TO COMPEL AND DENYING MOTION FOR PROTECTIVE ORDER AND AWARDING PLAINTIFF GRIEGO REASONABLE EXPENSES

This matter is before the Court on *Plaintiff, Michael Griego's Motion to Compel Discovery Responses and Request for Sanctions* [Doc. 159] and *Laberta M. Douglas' Motion for Protective Order* [Doc. 162]. As explained below, the Court will grant the motion to compel and deny the motion for protective order and will award reasonable expenses to plaintiff Griego.

### BACKGROUND

Alec Jaramillo ["Alec"] died as a result of a collision between his motorcycle and a car driven by Russell Douglas ["Russell"]. *See Complaint for Wrongful Death and Loss of Consortium* [Doc. 24]. Michael Griego ["Griego"], as personal representative for Alec's estate, brought a wrongful death claim against Russell and his insurer State Farm Mutual Automobile Insurance Company. [Doc. 1-2.] Through an amended complaint, Alec's parents Andrew Jaramillo and Teresa Romo joined the case and brought additional claims for loss of consortium. [Doc. 24.] Before Alec's parents joined as parties, U.S. Magistrate Judge Lynch entered a discovery order allowing "[a] maximum of 50 interrogatories, 50 requests for admission, and 50

1

requests for production [] by each party to any other party." [Doc. 17, p. 1]. No subsequent order amended the discovery limit. During the pendency of the case, Russell died, prompting the substitution of his widow Laberta Douglas ["Laberta"] as personal representative of the estate. [Docs. 29 and 30.]

Andrew Jaramillo served interrogatories on Laberta on September 19, 2017 [*See* Doc. 49], on December 28, 2017, [*See* Doc. 57] and again on September 27, 2018. [*See* Doc. 141.] On December 7, 2018 [*see* Doc. 146], Griego served twenty-six requests for admissions to Laberta. [Doc. 159, p. 1.][1] Griego included with each of his requests for admissions two or three interrogatories to be answered in the event of a denial. [*See* Doc. 160-4, pp. 1]. Laberta denied the first eighteen[2] with a general objection that Laberta cannot "admit or deny specialized medical assertions as established facts*."* [Doc. 159, p. 1.] Laberta refused to answer any of the interrogatories because she perceived that they exceeded the number allowed by the discovery order. [Doc. 159, p. 2].

Griego filed *Plaintiff, Michael Griego's Motion to Compel Discovery Responses and Request for Sanctions* [Doc. 159] on January 22, 2019.[3] Griego asked that the Court deem his unanswered Requests for Admissions 1-19 to be admitted or, in the alternative, order Laberta to fully respond to the associated interrogatories, and asked that the Court award him his attorney fees for the Motion. [Doc. 159, p. 4.] Laberta filed a response [Doc. 160] on February 5, 2019. No reply was filed and so briefing is complete. [Doc. 166].

---

[1] The parties refer to twenty-seven requests propounded, but there is no request for admission No. 8. *See* Doc. 160-4, p. 4.
[2] Griego's motion refers to nineteen denied requests but, again, there is no request for admission No. 8. *See* Doc. 160-4, p. 4.
[3] Griego's motion refers to Exhibits A and B which were not filed with the motion.

Contemporaneously and addressing the same dispute, Laberta filed *Laberta M. Douglas' Motion for Protective Order* [Doc. 162] on February 6, 2019. Laberta asked the Court to find that Griego's interrogatories violate the discovery order and to rule that she does not have to admit to medical conclusions without "the requisite medical knowledge", and asked for an award of attorney fees for her motion. [Doc. 162, p. 4.] Griego filed a response [Doc. 164] on February 21, 2019. Laberta filed a reply [Doc. 167] on March 7, 2019, completing the briefing. [Doc. 168].

## THE ISSUES TO BE DECIDED

The parties raise the following four primary issues: I. Whether the Court should deem Griego's Requests for Admissions 1-19 admitted? II. Whether the Court should compel Laberta to fully respond to Griego's Requests for Admissions? III. Whether the Court should compel Laberta to respond to Griego's interrogatories corresponding to their requests for admissions? IV. Whether the Court should award either party reasonable attorneys' fees for their respective motions?

## THE APPLICABLE LAW

### The General Scope of Discovery

The general rule is that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case". Fed. R. Civ. P. 26(b)(1). Information "need not be admissible in evidence to be discoverable." *Id.* The court cannot allow discovery outside the scope of Rule 26(b)(1). F. R. Civ. P. 26(b)(2)(C)(iii).

### Under what circumstances if any does a federal district court have authority to deem admitted a party's requests for admissions?

Rule 36(a)(1) allows for a party to serve on any other party a request that the party admit "the truth of any matters within the scope of Rule 26(b)(1) relating to ... facts, the application of law to fact, or opinions about either...." Fed. R. Civ. P. 36(a)(1)(A). A court may only deem

3

admitted a request for admission if it finds that the objection to answering is unjustified, orders an answer to be served, and then finds that the answer does not comply with Rule 36(a)(6). *See* Fed. R. Civ. P. 36(a)(6) ("The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order than an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The Court may defer its final decision until a pretrial conference of a specified time before trial.").

### Under what circumstances if any does a federal district court have authority to order a party to fully respond to request for admissions?

A court may order a party to fully respond to a request for admission if it finds that the party's objection to the request is unjustified. Fed. R. Civ. P. 36(a)(6). "Rule 36(a)(6) provides a means for judicial determination of the sufficiency of an answer or objection on motion of the requesting party. Courts do not address the sufficiency of an answer unless they first find an asserted objection invalid or improper. A justified objection may eliminate the need for an answer…. In the absence of a justified objection, an answer must be served." *Bowers v. Mortgage Elec. Registration Sys.*, 2012 WL 2798801, at *2 (D. Kan. July 9, 2012).

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4). "A response to a request for admission may be considered insufficient where the response is not 'specific' or where the explanation for a failure to admit or deny is not 'in detail' as required by Rule 36(a)(4). *Thymes v. Verizon Wireless, Inc.*, 2017 WL 4534838, at *4

(D.N.M. Feb. 9, 2017). "[A] respondent must, if he or she cannot admit or deny, state in detail why not." *S.E.C. v. Goldstone*, 300 F.R.D. 505, 523 (D.N.M. 2014). A party's provision of information in another form does not relieve it of the obligation to comply with Rule 36(a)(4). *See Brockmann v. Bd. of County Comm'rs of County of Shawnee*, 404 Fed. Appx. 271, 288 (10th Cir. 2010) (unpublished).

**Under what circumstances if any does a federal district court have authority to order a party to respond to interrogatories corresponding to another party's requests for admissions?**

A federal district court may compel a party to answer interrogatories where the party has failed to completely answer or provide meritorious objections to the interrogatories. *See* Fed. R. Civ. P. 33(b); Fed. R. Civ. P. 37(a)(3)(B)(iii). There does not appear to be any separate rule of law applicable to interrogatories that correspond to requests for admissions. However, at least one out of jurisdiction case discusses the propriety of using interrogatories in conjunction with requests for admissions, given the distinct purpose of each instrument. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Donaldson Co., Inc.*, No. CV 10-4948 JRT/AJB, 2013 WL 12155269, at *2 (D. Minn. Oct. 1, 2013) ("Admissions requests are not properly used as a means to establish facts that are in dispute or answer questions of law. Rather, the purpose of requests for admissions under Fed. R. Civ. P. 36(a) is to "expedite trial by eliminating the necessity of proving undisputed and peripheral issues." Moreover, admissions requests are not a discovery device and the court is not authorized to determine the accuracy of a denial to an admissions request or to determine the sufficiency of responses provided to corresponding interrogatories and document requests. In this instance the court is persuaded that [Defendant] is inappropriately attempting to compel the responding parties to adopt [Defendant]'s position on disputed operative facts and thereby ratify the legal conclusions that Federal attaches to those facts. [Defendant]'s effort to re-characterize the admissions requests

as seeking 'notice of injury' is unavailing and the motion to compel is denied." (internal quotation marks and citation omitted)).

**Under what circumstances if any does a federal district court have authority to award reasonable attorney fees for a motion to compel or a motion for protective order?**

The same expense award rules apply to motions to compel as to motions for protective order. Fed. R. Civ. P. 37(a)(5)(A); *see* Fed. R. Civ. P. 26(c)(3). Under Rule 37(a)(5)(A), the Court must award expenses against the nonmovant or its attorney if such a motion is granted unless the nonmovant's position was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). If the motion is denied the Court instead must award expenses against the movant. Fed. R. Civ. P. 37(a)(5)(B). If a motion to compel or for protective order is granted in part and denied in part, the Court may apportion the parties' reasonable expenses. Fed. R. Civ. P. 37(a)(5)(C). Thus, "[t]he great operative principle of Rule 37(a)(5) is that the loser pays," *In re Lamey*, 2015 WL 6666244 at *4 (D.N.M. 2015) (quoting Wright, Miller & Marcus, *Federal Practice and Procedure* (3d ed. 2010), § 2288, n.17), unless the losing position was substantially justified or an award of expenses would otherwise be unjust. *Id.* at *5.

## ANALYSIS OF THE ISSUES

**The Court cannot deem admitted a party's requests for admissions if the Court has not previously ordered them to be answered.**

A court may only deem admitted a request for admission if it finds that the objection to answering is unjustified, orders an answer to be served, and then finds that the answer does not comply with Rule 36(a)(6). The Court has not previously ordered Laberta to answer any of Griego's requests for admissions and therefore has no authority, under the circumstances, to deem any of them admitted.

## Under the circumstances, a blanket objection is not a proper response to these requests for admissions.

In response to Griego's requests for admission, Laberta provided a general objection that she cannot "admit or deny specialized medical assertions as established facts." [Doc. 159, p. 1.] The first question for the Court is whether that objection is invalid or improper under the circumstances. *See Bowers*, 2012 WL 2798801, at *2. The objection could be proper if two facts are shown: (1) that there is no response to any of the requests for admission that would not require specialized medical knowledge, and (2) that Laberta does not have the pertinent specialized medical knowledge. The Court is unaware of any evidence in the record that Laberta has any specialized medical knowledge and, since specialized knowledge is by definition uncommon, the Court will assume that Laberta has none. The validity of her objection then turns on whether is it is impossible to provide a response to these requests without such knowledge. The Court is not convinced by Laberta's assertion.

The structure of the discovery rules requires a response to the reasonable limit of the respondent's ability. If part of an assertion can be admitted, it must be, and any limitation must be explained. Fed. R. Civ. P. 36(a)(4). A reasonable inquiry is required before lack of knowledge excuses a lack of response. *Id.* The respondent's options are not always binary: a denial can, and indeed must, be qualified when good faith so requires. *Id.* Finally, the explanation for inability to respond must be provided in detail. *Id.; see also Thymes,* 2017 WL 4534838, at *4; *S.E.C. v. Goldstone*, 300 F.R.D. at 523. The import of the rule is not that the merest overbreadth justifies a blanket denial, but that the respondent must in good faith provide as complete a statement of its own view of the matter asserted as possible upon reasonable inquiry.

Many of the requests for admission here contain an element which must be resolved through specialized medical knowledge, but the subject matter still may be addressed by a

layperson with appropriate qualification. Others may not require any specialized medical knowledge at all. None of the requests appears so limited to specialized medical knowledge that it would be impossible for Laberta to provide any good faith response upon reasonable inquiry. Certain circumstances are relevant to this analysis: (1) Laberta is a party to the case as personal representative of Russell's estate and thus can be expected to have reasonable access to witness statements and documents which may inform her responses; (2) the requests for admissions pertain generally to Russell's health, medical status and diagnoses, physical capacity and limitations during the period from May 13, 2014, through the date of collision on September 13, 2014, and thereafter through November 26, 2014, and; (3) during that time period, Laberta was Russell's spouse and lived in the same house with him. In that context, the Court addresses the specific requests which are:

- NO. 1: Admit on September 13, 2014, Russell E. Douglas had loss of vision in his left eye.

- NO. 2: Admit on November 26, 2014, Russell E. Douglas, at best, had corrected vision in his right eye of OD +2.00 20/60, OS sc CF.

- NO. 3: Admit on September 13, 2014, Russell E. Douglas had, at best, corrected vision in his right eye of 20/50 based on a May, 2013 eye exam.

- NO. 4: Admit on November 26, 2014, Russell E. Douglas had a 3+ nuclear sclerotic cataract.

- NO. 5: Admit on November 26, 2014, Russell E. Douglas had a 2+ posterior subcapsular cataract.

- NO. 6: Admit on November 26, 2014, Russell E. Douglas had a l+ cortical cataract.

- NO. 7: Admit Russell E. Douglas underwent cataract surgery on December 12, 2014, and attained a 20/25 visual result with a -2.25-0.50 x 088.

- [There is no request for admission No. 8. *See* Doc. 160-4, p. 4.]

8

- NO. 9: Admit on September 13, 2014, Russell E. Douglas' vision in his right eye was affected by one or more cataracts.

- NO. l0: Admit one or more cataracts in Russell E. Douglas' right eye worsened his vision in bright sunlight.

- NO. 11: Admit prior to September 13, 2014, Russell E. Douglas' vision did not meet the New Mexico Motor Vehicle Department standard of 20/40 or better, in at least one eye.

- NO. 12: Admit, due to one or more of Russell E. Douglas' health conditions, he should not have been driving on September 13, 2014, pursuant to New Mexico Motor Vehicle Department.

- NO. 13: Admit the quality of Russell E. Douglas' vision was a contributing factor to the September 13, 2014 collision.

- NO. 14: Admit on September 13, 2014, Russell E. Douglas was a 93-year-old man with chronic lung disease and impaired oxygen capacity.

- NO. 15: Admit on or about May 13, 2014, Russell E. Douglas required supervision and/or assistance for personal care, household activities requiring lifting more than ten pounds occasionally and for sustained activity longer than 20 minutes at one time.

- NO. 16: Admit on September 13, 2014, Russell E. Douglas had severe chronic obstructive pulmonary disease ("COPD") with chronic hypoxia.

- NO. 17: Admit on September 13, 2014, Russell E. Douglas had a prescription for oxygen from Dr. David B. Gammon.

- NO. 18: Admit at the time of the subject collision on September l3, 2014, Russell E. Douglas was not utilizing his prescribed oxygen.

- NO. 19: Admit on September 13, 2014, the quality of Russell E. Douglas' health affected his ability to react appropriately and/or timely and contributed to the subject collision with Alec Jaramillo.

[Doc. 160-4, pp. 1-8.]

Request for Admission No. 1 asks Laberta to "[a]dmit on September 13, 2014, Russell E. Douglas had loss of vision in his left eye." Laberta would not be able to give a medical expert opinion on the matter but may have information which would prevent a good faith denial, such as medical documentation among discovery materials or Russell's private papers, or recollection of

9

contemporaneous statements by Russell about his quality of vision, or personal observations of Russell's behavior which would support an inference of vision loss.  She may have accompanied Russell to a vision exam where a medical professional diagnosed vision loss and, if so, could not in good faith ignore that knowledge and assert a denial.  The same analysis renders doubtful a general denial without qualification for Requests for Admission Nos. 9, 10, 14 (regarding other physical limitations), 15 (where personal observation may be very probative), and 17.

Request for Admission No. 2 is distinguishable because of the specificity of the medical information described.  A layperson would not have the independent capacity to derive a diagnosis of "corrected vision in his right eye of OD +2.00 20/60, OS sc CF."  On the other hand, a spouse and caretaker may have been present at an exam and heard the diagnosis, or may possess corroborating documents or have other information which in good faith would require a denial to be qualified.  In those and other conceivable circumstances, a blanket denial without explanation would not satisfy the requirements of Rule 36.  The same analysis applies to Requests for Admission Nos. 3-7 and 16, and with even more force to Request No. 17 about whether Russell had a prescription for oxygen.

Requests for Admission 11 and 12 inquire about Russell's ability to meet the vision standards for a driver's license on or before September 13, 2014.  It is possible to imagine reasonable circumstances in which Russell's spouse, caretaker, and personal representative would have pertinent information or knowledge, as well as other circumstances where she would not.  She may or may not have been present for Russell's MVD vision test, or heard him speak of it, or possess relevant documents.  It is not possible, however, to justify a blanket denial of the requests on the basis that an admission requires specialized medical knowledge.

Requests for Admission 13 and 19 appear to be the least likely to be admitted by a person in Laberta' circumstances because they ask for opinions about causation of the collision and there is no evidence that Laberta was present. On the other hand, Laberta may have information relevant to a causation analysis which would in good faith require at least a qualified denial. An objection that only specialized medical knowledge is probative is overbroad and invalid. A similar analysis applies to Request No. 18 which is a simple assertion of fact (Russell was not using oxygen at the time of the collision). If Laberta was not present at the time, she would not have personal knowledge of the fact, but she may have probative information such as whether supplemental oxygen was found in the vehicle or not, or whether Russell left it at home on the day of the collision, as well as information about the observations of other people. Certainly, specialized medical knowledge is not the sole basis of knowledge for Request No. 18.

In summary, none of the eighteen Requests for Admission support a general objection that they cannot be admitted in the absence of specialized medical knowledge. If Laberta is unable to make an affirmative denial, *i.e.*, to assert that the absolute contrary statement is the truth, then she must either admit or make a qualified denial with an explanation and, if the explanation is lack of information, she must assert that she has made a reasonable inquiry. The blanket objection based on lack of specialized medical knowledge is invalid and improper and so a specific answer must be provided for each request. F. R. Civ. P. 36(a)(4).

**Do these circumstances justify the Court compelling Laberta to respond to Griego's interrogatories corresponding to Griego's requests for admissions?**

Griego included interrogatories with his requests for admissions in the event that Laberta's response to each was "anything other than an unqualified admission". [Doc. 160-4, pp. 1-6.] For request Nos. 1-6, 10, 11, and 14-19, Laberta was asked to state:

l) Every fact upon which you base your denial;

11

> 2) Each and every lay and/or expert witness who will be called upon to testify in support of your denial; and
>
> 3) Every exhibit you plan to introduce at the time of trial in support of your denial.

*Id.* Requests Nos. 7, 9, 12, and 13 asked the first two questions but, apparently inadvertently, omitted the third. [Doc. 16-4, pp. 4-6.][4]

Laberta's sole objection to Griego's interrogatories is that they violate the numerical limitation in the Court's discovery order. *See* Doc. 17, p. 1 (fifty interrogatories "by each party to any other party"). Laberta adds the number of Griego's interrogatories to the number in the previous submissions by plaintiff Andrew Jaramillo to arrive at a total greater than fifty. [Doc. 160, p. 3; *see also* Doc. 167, p. 2.] Griego responds that he is entitled to his own limit of fifty interrogatories under the discovery order and that this submission is within that limit. With three questions attached to fourteen requests for admissions and two questions attached to another four requests, Griego has tendered exactly fifty interrogatories.

The determinative question is thus one of interpretation of the discovery order: does the limitation of fifty interrogatories "by each party to any other party" mean each of the five parties has individual limitations, or that they must be grouped in a more limiting way? Neither Griego nor Laberta has cited any authority for a rule of procedure or a canon of construction that would resolve the issue. The plain language of the order, referring to "each party" and "any other party", seems constructed expressly to apply to situations where there may be more than one party plaintiff or party defendant and to allow them to propound and respond to discovery independently. The Court is not persuaded that Griego is unable to propound interrogatories because Andrew Jaramillo

---

[4] Again, there is no No. 8. *See* Doc. 160-4, p. 4.

has already used up his own allotment. Griego's motion to compel responses to his interrogatories is well-taken and should be granted.

**Do these circumstances justify the Court awarding either party attorney fees?**

An award of expenses to the prevailing party is required under Rule 37(A)(5)(A) unless the other party's position is " substantially justified or other circumstances make an award of expenses unjust." The Court has concluded that Griego's motion to compel answers to his requests for admissions is well-taken and that his interrogatories are proper as well. Conversely, Laberta's motion for protective order which takes the opposite side of both of those issues in not well-taken, nor substantially justified, and should be denied. As a result, the Court will award reasonable expenses to Griego and deny the same to Laberta.

**CONCLUSIONS**

A blanket objection to requests for admissions, without a demonstration of an inability to provide either an absolute or qualified denial, is not consistent with F. R. Civ. P. 36(a)(6) and is invalid and improper. In addition, the discovery order in this case authorized Griego to propound up to fifty interrogatories to Laberta. Laberta was required to respond fully to both the requests for admissions and the interrogatories and, without substantial justification, failed to do so. Griego's motion to compel should be granted and Laberta's motion for protective order should be denied. Reasonable expenses should be awarded to Griego.

Accordingly, Laberta Douglas is ordered to provide under oath within 15 days of the date of this order full responses to Requests for Production 1-7 and 9-19 and, in the event of full or partial denial of any request for admission, full responses to the associated interrogatories. Griego is hereby authorized to file a motion seeking his costs and fees associated with litigating the instant motions. Such a motion must be filed within fourteen (14) days of the entry of this

Order and must be supported by contemporaneous and meticulous time records and an affidavit establishing the reasonableness of both the hours expended and the hourly rate requested. Laberta may file a response and Griego may file a reply in accordance with this Court's Local Rules. *See* D.N.M.LR-Civ. 7.4.

**IT IS SO ORDERED.**

_____
THE HONORABLE JERRY H. RITTER
U.S. MAGISTRATE JUDGE