# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MICHAEL GRIEGO, Personal Representative of
The Wrongful Death Estate of ALEC J. JARAMILLO,
Deceased, ANDREW JARAMILLO and TERESA ROMO,

    Plaintiffs,

v.                                                                        CIV 17-0244 KBM/JHR

LABERTA M. DOUGLAS, as Personal
Representative of the Estate of Russell E.
Douglas, and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFFS' POST-TRIAL MOTION

THIS MATTER came on for trial in Albuquerque on May 13, 2019 through May 22, 2019, before a jury and the undersigned United States Magistrate Judge presiding by consent of the parties. The issues were duly tried, and the jury rendered its unanimous verdict on May 22, 2019, finding against Plaintiffs and in favor of Defendant Laberta M. Douglas, as Personal Representative of the Estate of Russell E. Douglas. The Court entered a final judgment consistent with the jury's verdict on May 22, 2019. *Doc. 223.*

Plaintiffs have now filed a "Renewed Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) or Alternatively, Motion for a New Trial Pursuant to Rule 59(a)." *Doc. 226.* Plaintiffs cite to evidence received at trial that supports their position that Russell E. Douglas ("Douglas") negligently "put his life and the life of every motorist

and/or pedestrian, potentially in his path, in his own hands" by: failing to seek from Dr. Menning a Vision Report and provide it to the Motor Vehicle Department ("MVD"); failing to report losses of consciousness to MVD; continuing to drive when he knew or should have known his ability to drive had become substantially impaired; and driving without supplemental oxygen. *Id.* Yet these arguments ignore evidence to the contrary that was given to the jury for its consideration and which adequately supports its conclusion that Mr. Douglas was not negligent.

Juxtaposed to Plaintiffs' arguments that vision deficits made Mr. Douglas an unsafe driver is his optometrist's testimony that Mr. Douglas's vision was good enough to drive and that he filled out MVD paperwork. Simply because that paperwork cannot be located after 6 years does not necessitate an inference that it was not submitted. Moreover, testimony was received that Mr. Douglas would have been given a vision test at the MVD field office when he renewed his license just one month prior to the accident. And, his widow testified that Mr. Douglas was able to call play-by-play at amateur softball games without binoculars even after the accident.

Plaintiffs rely on a single document from a May 13, 2014 visit at Langford Sports and Physical therapy that Mr. Douglas needed supplemental oxygen at all times to avoid impairment from hypoxia. Yet other evidence disputed that contention – Mr. Douglas' widow testified that he did not need supplemental oxygen 24/7 and instead primarily used it at night while sleeping. She further testified that he was strong and loved singing in the choir and dancing without the aid of oxygen until shortly before his death. Moreover, the jurors witnessed Mr. Douglas' videotaped deposition which he

gave without the benefit of oxygen so that they could make their own observations as to any impairment.

Finally, Plaintiffs concede that Defendant's human factors expert Cynthia Rando "testif[ied] the aforementioned factors were not contributing factors to the subject collision. . . ." *Doc. 26* at 7. Indeed, Ms. Rando actually went farther and testified that Mr. Douglas did everything right on the day in question:

> Q. Last question. Mr. Sutten asked you a number of times if you found any fault on the part of Russell Douglas, and it was your testimony that you did not. Can you explain why you say that?
> A. So the reason I came to that conclusion after a thorough analysis of the facts at hand is that when we look at the situation, what we need to ask of every driver is: "Did you act in all the reasonable behaviors we could expect you to, with the information you had and were able to perceive, based off of the rules of the road and also the driving situation at hand?"
> And so when we look at the situation from Mr. Douglas' point of view, he approached the turning bay. He turned into the turning bay. He stopped. He assessed the driving scene. He reported all of this. He accurately recognized that Mr. Jaramillo's truck was traveling at 30, 35 mile rate of speed. He also visually scanned and said that he could not see any other cars in that field of view.
> So the normal judgment for any reasonable driver is that: Okay, this truck must be the fastest driving truck. I have nine seconds of clearance, or thereabouts. I have enough time to safely make my turn. And based off of Mr. Douglas' testimony or deposition comments, he verbally stated all of those steps. And no human is trained to do that. That's something you do subconsciously while you're driving. But the fact that he was able to report those were the steps that he takes is further evidence that he did what he should have done or should have been expected to do as a safe driver.

*Transcript of Rando Testimony, Doc. 236* at 59:9-60:14. In their motion, Plaintiffs now contend that "Ms. Rando does not have the education, training or experience to opine regarding how Douglas's visual, physical condition and mentation issues affected him when operating a motor vehicle and/or at the time of the subject collision." *Doc. 226* at 7. As Defendants note, however, "Plaintiffs neither challenged Ms. Rando's qualifications

3

nor objected to her testimony at trial." *Doc. 229* at 7. The Court therefore finds that the jury had a legally sufficient evidentiary basis to reasonably find for Defendants on the issue of negligence. Fed. R. Civ. P. 50(b)(1).

Alternatively, Plaintiffs move for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure which provides that a court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Plaintiffs rely on *Danz v. Kennon*, 63 N.M. 274 (1957) which indeed has a similar fact pattern. In the *Danz* case, the eastbound defendant was stopped at an intersection in the left turn lane waiting for the light to turn green. When it changed, a westbound pickup truck was also stopped in its inside lane waiting to make a left turn. Unfortunately, the pickup truck on obscured plaintiff's westbound vehicle that was passing the stopped pickup on its right. In *Danz,* the New Mexico supreme court held that the defendant "was legally bound to look and see westbound traffic so near the intersection and yield the right-of-way. She admittedly failed to do so, and a violation of these statutory standards of conduct was negligence per se." *Id.* at 276.

The fact pattern here is materially distinguishable from that in *Danz* in an important way, however. Unlike the stopped pickup in *Danz,* the potentially obstructing truck with its full trailer was clearly traveling at or near the posted speed limit. As Ms. Rando testified, when a driver sees only one vehicle and no others, it is "normal judgment for any reasonable driver" to believe "this truck must be the fastest driving" vehicle. *Transcript of Rando Testimony, Doc. 236* at 60:1-5. At trial, Mr. Sutten's asked

4

Ms. Rando, "To the extent you analyzed Russell Douglas' actions, isn't it true that you found no significant fault on his part?" to which Ms. Rando responded affirmatively. Thus, contrary to Plaintiffs' position and as the jury was instructed, "[t]he mere happening of an accident is not evidence that any person was negligent." *Court's Instruction No. 26.*

The remainder of the Plaintiffs' Reply Brief is peppered with arguments notably absent in their Motion, all of which are unpersuasive. Testimony that Witness Anthony Sessions had previous law enforcement experience did not unfairly "bolster" his testimony but instead was relevant to his ability to accurately perceive and estimate speeds of vehicles. Although Murrae Haynes' testimony made stray references to helmets, as I noted at that time, there was no indication or inference that Mr. Jaramillo was not wearing a helmet at the time of the accident. The Court is simply unpersuaded that its evidentiary rulings were contrary to law nor that if in error, the rulings caused significant prejudice to Plaintiffs or would have changed the jury's verdict.

Wherefore,

IT IS HEREBY ORDERED that Plaintiff's Renewed Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) or Alternatively, Motion for a New Trial Pursuant to Rule 59(a) *(Doc. 226)* is **denied**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent of the Parties